**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-3584

———————

PAUL DAVID WOOSLEY,
                                        Appellant

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT;
HONORABLE ALVIN W. THOMPSON, UNITED STATES DISTRICT JUDGE;
DAVID H. SMITH; KIMBERLY A. SMITH

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-15-cv-04778)
Honorable C. Darnell Jones, II, District Judge

———————

Submitted under Third Circuit L.A.R. 34.1(a)
March 17, 2017

BEFORE:  GREENAWAY, JR., SHWARTZ, and GREENBERG, Circuit Judges

(Opinion Filed:  June 14, 2017)

———————

OPINION*

———————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent

GREENBERG, <u>Circuit</u> <u>Judge</u>.

I.      INTRODUCTION

Paul David Woosley appeals from an order entered on August 10, 2016, in the District Court for the Eastern District of Pennsylvania dismissing his pro se complaint against the United States District Court for the District of Connecticut, Alvin W. Thompson, a judge in the District of Connecticut, and Woosley's biological son's adoptive legal parents, David H. Smith and Kimberly A. Smith.

Woosley's son was born in Pennsylvania on July 8, 1992, but the Smiths adopted him in Texas after Woosley, within 72 hours of the child's birth, signed an Affidavit of Waiver of Interest in the Child.  Appellant's br. at 8; <u>see</u> App'x at 52.  Although Woosley contends that the document merely permitted an adoption agency to take temporary custody of the child, clearly the affidavit had more far reaching consequences, as the Texas courts terminated his parental relationship following which the Smiths adopted the child.  Woosley obviously came to regret his action as is evidenced by the circumstance that since 1993, he has engaged in extensive litigation in multiple jurisdictions in an attempt to reassert parental rights over his now-adult biological son.  He has advanced his arguments—the majority in lawsuits that he initiated—in no less than twelve jurisdictions including at least three state trial courts, one state court of appeals, four United States district courts, three United States courts of appeals, and the United States Supreme Court, which twice has denied him a writ of certiorari.

After Woosley pursued litigation for a decade in three states, the Smiths initiated an action in the District of Connecticut in which they obtained an injunction in 2003

2

barring Woosley from attempting to relitigate the validity of orders of Texas courts terminating his parental-rights to the child and also attempting to nullify the Texas court adoption proceedings. Woosley appealed from the injunctive order to the United States Court of Appeals for the Second Circuit in 2005 but that court affirmed the order for the injunction though it modified the injunction to allow Woosley to return to the Connecticut District Court and seek relief from the injunction in the event

> that he can (1) locate a jurisdiction in which a limitations period remains open (thereby . . . escaping the preclusive effect of the Pennsylvania District Court's [earlier] judgment [that held that his claims were time-barred]), (2) can obtain personal jurisdiction over the [adoptive parents], and (3) is otherwise then entitled to challenge the Texas decrees.

Smith v. Woosley, 399 F.3d 428, 436 (2d Cir. 2005). We see nothing in the record before us that suggests that the modified injunction does not remain in effect. The injunction is not an outlier order as courts have entered judgments entitled to preclusive effect against Woosley on the issue of termination of his parental rights under the laws of Texas and Pennsylvania.[1]

In 2010, Woosley violated the 2003 Connecticut injunction by filing a Petition to Void Adoption in the Court of Common Pleas of Bucks County, Pennsylvania, even though the District Court for the Western District of Pennsylvania had determined over a decade earlier that a Pennsylvania statute of limitations barred his challenge to the adoption. See Smith, 399 F.3d at 430 (discussing the unreported Western District of Pennsylvania case). In 2013, pursuant to the 2003 injunction as modified on appeal in

---

[1] According to the District Court in the case before us now a similar judgment was entered in Connecticut but we cannot find any record of the judgment in the record on this appeal. App'x at 9.

3

2005, the district court in Connecticut verbally ordered Woosley to withdraw that petition. See App'x at 27-29. Woosley did so on August 23, 2013, and then filed the current suit under 42 U.S.C. § 1983[2] in the District Court for the Eastern District of Pennsylvania, naming the District of Connecticut, Judge Thompson, and the adoptive parents as defendants. Id. at 25. In this action, Woosley contends that the Connecticut injunction violated his "fundamental right to child custody" and he requests $22 million in damages. See id. at 25, 27, 29. The District Court dismissed the action on the grounds that Woosley lacked constitutional standing to bring the case. Because we agree with the District Court that Woosley lacks standing to challenge the injunction, we will affirm the dismissal of this case with prejudice.[3]

II.      STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

Inasmuch as there is a question of jurisdiction in this case we address that issue at the outset. "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (internal quotations and citation omitted). But "a federal court always has jurisdiction to determine its own jurisdiction." White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010) (quoting United

---

[2] The judicial defendants recognize that, because § 1983 only applies to state actors, Woosley's action is actually a Bivens claim. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971).

[3] The District Court alternatively ruled that because Judge Thompson is immune from suit, the adoptive parents cannot be sued under § 1983, and dismissal of the action as a sanction was warranted. App'x at 13-22.

4

States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 2454 (2002)). Accordingly, the District Court had jurisdiction to determine its own jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291 to review its determination on that issue. See Becton Dickinson & Co. v. Wolckenhauer, 215 F.3d 340, 343 (3d Cir. 2000).

We review "dismissals for lack of standing de novo." Common Cause of Pa., 558 F.3d at 257 (internal quotations and citation omitted). "Plaintiffs, as the parties invoking federal courts' jurisdiction, bear the burden of establishing their standing." Id. When, as here, the challenge to standing is facial rather than factual, we review "only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Id. (internal quotations and citation omitted). Yet, as with motions to dismiss generally, we may consider matters of public record and exhibits attached to the complaint. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

III.     BACKGROUND OF PRIOR LITIGATION

5

The above introduction provides the relevant background of this litigation. Nevertheless, this case cannot be understood without focusing on the extensive litigation related to Woosley's attempts to have declared void Texas decrees entered in July 1992 terminating his parental rights pursuant to the waiver we have described as well as an adoption decree of March 1993. Smith, 399 F.3d at 430. Accordingly, we will describe at least eight separate actions regarding Woosley's biological son's adoption, which we more or less will describe in chronological order.

First, in July 1993, Woosley contested his son's adoption in Bexar County Court, Texas, unsuccessfully arguing that the decree terminating his parental rights was void. Though he appealed from the order of the county court, an appellate court affirmed on appeal in April 1996. See Woosley v. Smith, 925 S.W.2d 84, 88 (Tex. App.—San Antonio 1996, no writ) (holding that Woosley "voluntarily relinquished his rights" to his son "and had every intention of doing so even prior to the baby's birth" as well as noting that "[g]iven the facts of this case and the controlling law, the mandate requiring us to look to the best interest of the child is easily harmonized with the public policy favoring the finality and integrity of judgments").

Second, in December 1996, Woosley filed suit in the district court for the Western District of Pennsylvania "seeking a declaration that his parental rights had not been validly terminated and an order setting aside the adoption decree," but the court denied the action as it was untimely under the Pennsylvania statute of limitations. Smith, 399 F.3d at 430 (discussing that unreported 1996 case). On appeal we affirmed. Woosley v. Smith, 191 F.3d 446 (3d Cir. 1999). Woosley petitioned for certiorari but the Supreme

6

Court denied the petition in 2000. Woosley v. Smith, 528 U.S. 1159, 120 S.Ct. 1169 (2000).

Third, in or around 2000, Woosley returned to the Bexar County Court filing a motion seeking an order to "vacate void decrees, referencing the same decree of termination and decree of adoption" that the Texas court of appeals already had affirmed. As would be expected the county court denied the motion and, on Woosley's appeal, a court of appeals in Texas affirmed its judgment on the grounds of res judicata and collateral estoppel. Woosley v. The Adoption All., No. 04-00-00343-CV, 2001 WL 687571, at *1 (Tex. App.—San Antonio 2001, no pet.). In addition, the Texas court of appeals affirmed the county court's assessment of sanctions against Woosley for filing a frivolous pleading. Id. Woosley again unsuccessfully sought certiorari. Woosley v. Adoption All., 537 U.S. 878, 123 S.Ct. 78 (2002).

Fourth, in 2002, Woosley was arrested in Connecticut for attempting to kidnap his son. The criminal charges were resolved by a plea agreement that provided for Woosley's conviction "of various offenses, including custodial interference in the first degree." Smith, 399 F.3d at 430. Two weeks before this conviction, Woosley "filed a suit in the Connecticut Superior Court, seeking visitation rights and apparently contending that the Texas decrees were void." Id. The Connecticut Superior Court dismissed this case in March 2003, after the district court in Connecticut issued its intervening injunction in February 2003, because his parental rights had been terminated in Texas and he failed to show the requisite "parent-like relationship." Woosley v. Smith, No. FA020392653S, 2003 WL 1490317, at *1-2 (Conn. Super. Ct. Mar. 3, 2003).

The Connecticut state court acknowledged the District of Connecticut's injunction in its opinion, but the injunction had no bearing on the case's outcome because Woosley's "pleading raised no issue as to the validity of the adoption proceedings, and such would be inappropriate in proceedings for visitation . . . ." Id. at *2.

Fifth, some time prior to 2003, Woosley filed suit in the District Court for the Western District of Texas attempting to overturn the Texas state court judgments affirming the adoption and termination of his parental rights. See Woosley v. Adoption All., 79 F. App'x 672 (5th Cir. 2003). The district court held that the Rooker-Feldman doctrine barred the action because the court did not have the authority to review the state court's judgments. Id. Woosley appealed but the Court of Appeals for the Fifth Circuit affirmed the district court's disposition in November 2003, as it held that "those [state court] judgments are not void for lack of jurisdiction." Id. The court of appeals also noted: "Even if Woosley's complaint is characterized as a due process challenge to the procedures employed by the state court, the suit in federal court is nevertheless barred" under the Rooker-Feldman doctrine. Id.

Sixth, in January 2003, the adoptive parents filed the suit in the District of Connecticut to which we already have made reference seeking an injunction prohibiting Woosley from relitigating the Texas decrees' validity and requesting damages for vexatious litigation and intentional infliction of emotional distress. Smith, 399 F.3d at 431. The district court in Connecticut granted that injunction in February 2003 in reliance on the "relitigation exception" to 28 U.S.C. § 2283, but, on appeal, as we already have indicated, the Court of Appeals for the Second Circuit modified the injunction in

8

March 2005 to permit Woosley to bring a suit in a jurisdiction provided that he could show that: (1) a statute of limitations would not bar the action, (2) he could obtain personal jurisdiction over the adoptive parents, and (3) he otherwise would have a valid claim.  Id. at 436.  At that time, the court of appeals noted that "no jurisdiction of which we are aware has a limitations period of such length as to leave Woosley's challenges to the Texas decrees now viable."  Id.

Seventh, Woosley, according to his pleadings, petitioned for and obtained relief from the Connecticut injunction on May 17, 2010, about two months before his son became a legal adult, to file a petition for a writ of habeas corpus for child custody in Connecticut. Appellant's br. at 7. The District Court in the action now on appeal has noted that that action "was sua sponte dismissed as unmeritorious without being docketed," but we cannot find any record of this dismissal in the materials that have been provided to us on this appeal. App'x at 9.

Eighth, in 2010, Woosley filed a Petition to Void Adoption in Bucks County, Pennsylvania, that he subsequently withdrew after the district court in Connecticut ordered him to do so. See id. at 29. As we stated above, the district court in the Western District of Pennsylvania already had ruled that his claim was barred by the statute of limitations under Pennsylvania law in 1996, and we affirmed that ruling in 1999.

This current suit is at least[4] the ninth in which Woosley has asserted the existence of parental rights that the state court of appeals in Texas in 1996 held that he had relinquished. None of the prior eight suits have resulted in a ruling favorable to Woosley.

IV.     DISCUSSION

---

[4] This background does not include Woosley's suit that the District Court in this case states was "against the Connecticut Superior Court and Unnamed Prosecutors after Plaintiff's arrest for various felonies in connection with his attempted kidnap of [his son] and the Superior Court's refusal to hear his petition . . . ." We exclude this suit from the statement of the background of this case because we have not been provided a record of that proceeding. App'x at 9.

Woosley does not address why he has standing in this case. He contends that he described his arguments in the District Court "so those arguments will not be repeated here." Appellant's br. at 31. The contentions that he asserts on appeal involve the District Court's determination that, regardless of the injunction, Woosley is precluded from pursuing a suit to establish status as a lawful parent by "(1) the legal doctrine of res judicata, (2) the applicable statute of limitations, and (3) mootness due to [his son's] obtaining the age of majority." App'x at 9. He contends that the District Court's determination that "the alleged injury would occur based on free-standing legal doctrines and is not fairly traceable to the Order at issue" is incorrect because "[p]reclusion doctrines do not apply to void judgments." Appellant's br. at 31-32. He claims that the 2003 Connecticut injunction has injured him because it "hinders [him] from entering into a family court to seek confirmation that he is the legal father."[5] Id.

The judicial defendants respond that Woosley lacks constitutional standing because res judicata and statutes of limitations bar his claims, so he cannot assert injury in fact fairly traceable to their actions. Appellees' br. at 10-11.[6] They also argue that the

---

[5] He also takes issue with the District Court's statement that "any attempt to force a legal relationship with [his son] would be mooted by [the son's] obtaining the age of majority." App'x at 12. He claims that he is not attempting to "force a relationship," but thinks that a document recognizing a legal relationship would make it "much more likely that [he] would be able to develop a relationship with his adult son if he can present this type of document. It also wouldn't hurt if Woosley had an extra $22 million in his bank account. Favorable legal action, besides providing vindication, would tend to encourage a substantive relationship." Appellant's br. at 32-33.

[6] The Smiths have not participated on this appeal but Woosley refers to them as "Appellees." Appellant's br. at 4.

injunction has not "injured Woosley [even though] he contends . . . [that it affects] his ability to challenge the termination of his parental rights." Id. at 11.

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273, 128 S.Ct. 2531, 2535 (2008). A plaintiff must show that it has Article III standing by establishing:

> (1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly . . . trace[able] connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

Id. at 273-74, 128 S.Ct. at 2535 (omitting internal quotation marks) (alteration in original).

Woosley attempts merely to incorporate by reference the standing argument that he presented to the District Court but we will not consider those contentions. "To permit parties to present arguments" through incorporation by reference to district court pleadings "would effectively nullify the page or word limits imposed by the appellate and local rules. . . . That cannot be permitted . . . ." Papp v. Fore-Kast Sales Co., 842 F.3d 805, 816 (3d Cir. 2016). Thus, we consider only those arguments that he advances in his appellate brief.

Woosley has neither a legally protected interest affected by the injunction nor an injury fairly traceable to it. The injunction as modified permits him to file a claim for recognition of his parental rights so long as the court in which he files his suit can

12

exercise personal jurisdiction over the defendants, a statute of limitations does not bar the action, and he can assert a viable substantive claim. An action that cannot satisfy these criteria has no chance of success and merely burdens the court system and the defendants as it is by its very nature frivolous. Woosley has no legally protected interest in filing frivolous suits.

Put differently, Woosley's alleged injury—being prevented from exercising his fundamental right to seek a relationship with his child—is not fairly traceable to the District of Connecticut, Judge Thompson, or the Smiths. The District of Connecticut's 2003 injunction as modified by the Court of Appeals for the Second Circuit does not bar Woosley from filing a lawsuit to pursue his status as a parent. Rather, he simply is prohibited from filing suit in jurisdictions where the statute of limitations bars his claim. Woosley, 399 F.3d at 429-31. Thus, when Judge Thompson issued his verbal order directing Woosley to withdraw his Pennsylvania state court petition in the summer of 2013, he barred Woosley from litigating his parental rights in Pennsylvania state-court, not because of the terms of the modified injunction order, but because the Pennsylvania statutes of limitations barred him from litigating his parental rights. The ultimate source of his alleged "harm" is the order that terminated his parental rights and the fact that a challenge to that order is time barred, not the verbal order or conduct of any of the defendants. Accordingly, the District Court correctly concluded that Woosley lacked standing.

Because Woosley lacks standing, we do not have jurisdiction and must dismiss the case.[7]

V.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of this action with prejudice for lack of standing by an order entered August 10, 2016.[8]

---

[7] Even if we held that Woosley has standing we would affirm the order for dismissal as the action is clearly without substantive merit.

[8] Woosley does not contend that the dismissal should have been without prejudice.